```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION


BRUNO RODI,

          Plaintiff,

v.                                    Case No: 2:13-cv-556-FtM-29CM

KEVIN J. RAMBOSK, Collier
County Sheriff, in his
individual and official
capacity, MICHELE SHATTUCK,
in her individual capacity
as a Collier County Police
Officer, and KEVIN WARD, in
his individual capacity as a
Collier County Police
Officer,

          Defendants.
_____
```

## OPINION AND ORDER

This matter comes before the Court on review of Defendant Kevin Rambosk, Sheriff of Collier County's Motion to Dismiss Count III of Plaintiff's Complaint (Doc. #15) filed on October 18, 2013. Plaintiff filed a Response to Defendant Kevin Rambosk, Sheriff of Collier County's Motion to Dismiss Count III of Plaintiff's Complaint (Doc. #21) on November 1, 2013. Also before the Court is Defendant Shattuck's Motion for Judgment on the Pleadings (Doc. #27) filed on February 20, 2014. Plaintiff filed a Response in Opposition to Defendant Shattuck's Motion for Judgment on the Pleadings (Doc. #28) on February 27, 2014.

**I.   BACKGROUND**

On March 8, 2012, plaintiff Bruno Rodi, a sixty year old male, was driving his motor vehicle on Industrial Boulevard in Naples, Florida. (Doc. #1, ¶¶ 3, 9.) After passing another vehicle, Rodi drove through a four way stop without stopping. (Id. ¶¶ 10-11.) Michele Shattuck, a deputy with the Collier County Sheriff's Office, witnessed the event and initiated a traffic stop. (Id. ¶¶ 5, 12-13.)

Deputy Shattuck approached plaintiff's vehicle and obtained Rodi's license and registration. Plaintiff acknowledged that he did not stop at the intersection and asked that he be issued a ticket so he could be on his way. (Id. ¶ 15.) Deputy Shattuck requested that plaintiff remain in his vehicle while she performed a background check. (Id. ¶ 16.) Instead of using plaintiff's driver's license to conduct the background check, Deputy Shattuck relied on the vehicle plate numbers. (Id. ¶ 17.) After inputting the vehicle plate numbers, the computer's automated audio voice stated "thirty year old white male license suspended." (Id. ¶ 18.) Deputy Shattuck then returned to the vehicle and ordered plaintiff to shut the engine off and step out of the vehicle. (Id. ¶ 21.) According to the police report, Deputy Shattuck wanted to question plaintiff about the suspended driver's license and obtain more information. Deputy Shattuck, however, never ran a database check of the driver's license in her possession. (Id. ¶ 22.)

2

Plaintiff complied with the order to turn off the vehicle, but asked why he had to step out of the vehicle. He also inquired as to why he could not be issued a ticket and go on his way. (Id. ¶ 23.) Deputy Shattuck once again ordered plaintiff out of the vehicle and plaintiff again asked why she would not give him a ticket and permit him to leave. Plaintiff then informed Deputy Shattuck that he was reluctant to get out of the car because his foot was broken. (Id. ¶ 24.)

Due to plaintiff's non-compliance, Deputy Shattuck drew her Taser weapon and pointed it at Rodi while forcibly opening the car door. Deputy Shattuck also radioed for backup. Plaintiff then asked Deputy Shattuck not to shoot him and attempted to exit the vehicle. (Id. ¶ 26.) Once plaintiff was out of the vehicle, Deputy Shattuck holstered her Taser, drew out her handcuffs, and ordered plaintiff to place his hands on the top of the vehicle. Plaintiff complied with the order. Deputy Shattuck then began the process of handcuffing plaintiff. (Id. ¶ 27.)

At that time, Kevin Ward, also a deputy with the Collier County Sheriff's Office, arrived on the scene with his service weapon drawn and pointed at Rodi. (Id. ¶¶ 5, 28.) Deputy Shattuck then directed Deputy Ward to finish restraining plaintiff, but failed to inform him that plaintiff's foot was broken. (Id. ¶¶ 28, 30.) Deputy Ward "aggressively and forcefully" grabbed plaintiff and brought him back to Deputy Shattuck's police cruiser

3

while Deputy Shattuck searched the vehicle. (Id. ¶ 28.) While in the process of placing handcuffs on plaintiff, Deputy Ward, in an attempt to further spread Rodi's legs, "willfully, wantonly and recklessly kicked [] Rodi's leg in such a fashion exhibiting excessive force and causing a fracture through the distal fibular of [] Rodi's leg." (Id. ¶ 32.)

Plaintiff was then placed into the back of the police cruiser and was transported to the Collier County Jail. (Id. ¶¶ 34, 36.) While in custody at the Collier County Jail, plaintiff was required to ambulate for a prolonged period of time on his reinjured foot and newly broken distal fibular. (Id. ¶ 38.) Despite the visible swelling on his ankle and foot, the clear pain demonstrated by his verbal indications, his irregular gait, and his grimacing facial expressions, plaintiff was treated with "reckless disregard" by the Collier County Sheriff's Officers working in the jail facility. (Id. ¶ 39.) Although the traffic stop was conducted at approximately 8:30 am, plaintiff was not released from the jail facility until 9:00 pm. (Id. ¶¶ 9, 40.)

Plaintiff was formally charged with resisting arrest without violence pursuant to Fla. Stat. § 843.02 by the State Attorney's Office for the Twentieth Judicial Circuit in Collier County. The charges, however, were ultimately dismissed at the request of the State Attorney's Office, as was the ticket for failure to stop at the stop sign. (Id. ¶ 46.)

On July 29, 2013, plaintiff filed a five-count complaint asserting claims against Deputy Shattuck, Deputy Ward, and Collier County Sheriff Kevin Rambosk. In Counts I and II of the Complaint, plaintiff asserts that Deputy Ward and Deputy Shattuck, respectively, deprived him of his rights to be free from excessive force and seizure without probable cause as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983. In Count III, plaintiff sets forth supplemental state tort claims against Sheriff Rambosk, in his official capacity as Sheriff of Collier County. Count IV, also an official capacity claim against Sheriff Rambosk, seeks a judgment declaring that plaintiff has suffered excessive force, wrongful seizure, and cruel and unusual punishment in violation 42 U.S.C. § 1983. Finally, in Count V plaintiff asserts a claim against all official capacity defendants for violations of his constitutional rights under 42 U.S.C. § 1983.

**II.  Sheriff Rambosk's Motion to Dismiss**

Sheriff Rambosk moves to dismiss the state law tort claim in Count III of the Complaint on the grounds that he is entitled to immunity under Fla. Stat. § 768.28(9) because there are no allegations that Deputies Shattuck and Ward acted within the scope of their employment during their encounter with plaintiff. Plaintiff argues to the contrary.

Under Florida law, a municipality "shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). In McGee v. Volusia County, the Florida Supreme Court held that "[i]n any given situation either the [police] agency can be held liable under Florida law, or the employee, but not both."  679 So. 2d 729, 733 (Fla. 1996).  Acts "that can be described as abuses of lawful power" are within the scope of an officer's employment unless they "are so extreme as to constitute a clearly unlawful usurpation of authority the [officer] does not rightfully possess . . . or if there is not even a pretense of lawful right in the performance of the acts." Id.  The question as to whether the officer acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property is one for the finder of fact. Id.

The Complaint alleges that Shattuck and Ward were at all material times deputy Sheriffs for the Collier County Sheriff's Office who were "acting under color of law." (Doc. #1, ¶ 5.) The factual allegations assert that both these defendants were engaged in a traffic stop and arrest while working as deputy Sheriffs (Doc. #1, ¶¶ 9-47.)  Count III alleges that defendant Ward battered and

6

wrongfully detained plaintiff, which is actionable under Fla. Stat. § 768.28. (Doc. #1, ¶ 55.) These allegations are sufficient to plausibly allege that these defendants were acting within the scope of their employment, and the motion is therefore denied.

**III. Deputy Shattuck's Motion for Judgment on the Pleadings**

Deputy Shattuck asserts that she is entitled to a judgment on the pleadings because plaintiff has failed to state a claim upon which relief may be granted. The Court agrees.

**A.**

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Riccard v. Prudential Ins. Co. of Am., 307 F.3d 1277, 1291 (11th Cir. 2002) (quoting Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001)). When reviewing a motion for judgment on the pleadings, the court must view the facts in a light most favorable to the nonmoving party. Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). A judgment on the pleadings can be granted only if the nonmoving party can prove no set of facts which would allow it to prevail. Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc., 404 F.3d 1297, 1303 (11th Cir. 2005) (citations omitted).

7

**B.**

Deputy Shattuck argues that plaintiff has failed to state a claim for false arrest and excessive force because plaintiff's arrest was supported by probable cause and the use of force was minimal. The Court agrees with both positions.

**1. Probable Cause to Arrest**

In order to establish liability under 42 U.S.C. § 1983, the plaintiff must prove that the defendants deprived him of a right secured under the United States Constitution or federal law and that such deprivation occurred under the color of state law. United States Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). An arrest made without probable cause "violates the right to be free from an unreasonable search under the Fourth Amendment" and provides a basis for a section 1983 claim. Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003) (citing Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998)). "The existence of probable cause at the time of the arrest [] constitutes an absolute bar to a section 1983 claim for false arrest." Myers v. Bowman, 713 F.3d 1319, 1326 (11th Cir. 2013) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004)). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense

8

has been or is being committed." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010) (citing Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997)).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). Even minor offenses, such as misdemeanors or traffic violations, may be the basis for a full custodial arrest. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). In Atwater, the Supreme Court held that the arrest of a motorist for the fine-only offenses of failing to wear a seat belt and failing to fasten the children's seat belts did not violate the Fourth Amendment. Id. It follows that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in [her] presence, [she] may, without violating the Fourth Amendment, arrest the offender." Atwater, 532 U.S. at 354.

Florida law mandates that "every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a clearly marked stop line . . . ." Fla. Stat. § 316.123(2)(a). A violation of this provision is a noncriminal traffic infraction punishable as a moving violation. Fla. Stat. § 316.123(4). Under the facts alleged in the Complaint, there is virtually undisputed probable cause for the stop of the vehicle.

9

Holland v. State, 696 So. 2d 757, 759 (Fla. 1997) (failure to stop at a stop sign provided probable cause to stop vehicle); State v. Young, 971 So. 2d 968, 971 (Fla. 4th DCA 2008) (same); State v. Robinson, 756 So. 2d 249, 250 (Fla. 5th DCA 2000) (same).

Plaintiff's opposition to Deputy Shattuck's motion focuses on the absence of probable cause supporting the charge for resisting an officer without violence.  This is unavailing for several reasons.

First, Florida law provides that "[a] law enforcement officer may arrest a person without a warrant when . . . [a] violation of chapter 316 has been committed in the presence of the officer." Fla. Stat. § 901.15(5).  Failure to stop for a stop sign is an offense which authorizes a warrantless arrest when committed in the officer's presence.  State v. Carmody, 553 So. 2d 1366, 1367 (Fla. 5th DCA 1989).

While probable cause to arrest for running the stop sign was all that was required for an arrest, Arrington v. Kinsey, 512 F. App'x 956, 959 (11th Cir. 2013); State v. Cote, 547 So. 2d 993, 996 (Fla. 4th DCA 1989), plaintiff did not comply with multiple lawful requests to exit his vehicle given by Deputy Shattuck while engaged in the lawful execution of a legal duty.  Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977) (law enforcement officer may permissibly order a driver to exit a car when he has lawfully detained a vehicle for a traffic violation).  At that point

plaintiff was resisting arrest without violence in violation of Fla. Stat. § 843.02. To support a conviction for resisting arrest without violence, "the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." C.E.L. v. State, 24 So. 3d 1181, 1185–86 (Fla. 2009). The officer had probable cause to arrest for this offense as well. Ainsworth v. Norris, 469 F. App'x 775, 778 (11th Cir. 2012). Therefore, Deputy Shattuck's motion for judgment on the pleadings as to plaintiff's claim for false arrest is granted.

**2.   Excessive Force**

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). It has long been recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). "Because a police officer is entitled to use some force to arrest a suspect, 'the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.'" Myers v. Bowman, 713 F.3d 1319, 1327 (11th Cir. 2013) (quoting Nolin v. Isbell, 207 F.3d

11

1253, 1257 (11th Cir. 2000)). In determining if the use of force was reasonable, a court must examine (1) the need for the application of force, (2) the relationship between the need and amount of force use, and (3) the extent of the injury inflicted. Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (citing Lee, 284 F.3d at 1198). A court's task is only to determine whether an officer's conduct falls within the outside boarders of what is reasonable in the constitutional sense. Buckley v. Haddock, 292 F. App'x 791, 794 (11th Cir. 2008).

Based upon the pleadings, the Court finds that the force used by Deputy Shattuck was objectively reasonable. Plaintiff twice refused lawful commands to exit the vehicle after a lawful traffic stop. The officer was fully justified in pointing a firearm to enforce the lawful orders, but pulled only a Taser. When plaintiff complied, Deputy Shattuck put her weapon in her holster and directed a fellow officer to proceed with the arrest. Nothing supports a claim of excessive force by Deputy Shattuck in this case. Therefore, Deputy Shattuck's motion for judgment on the pleadings as to the claim for excessive force is granted.

Accordingly, it is now

**ORDERED:**

1. Defendant's Defendant Kevin Rambosk, Sheriff of Collier County's Motion to Dismiss Count III of Plaintiff's Complaint (Doc. #15) is **DENIED.**

2. Defendant Shattuck's Motion for Judgment on the Pleadings (Doc. #27) is **GRANTED** as to the claim for false arrest and the claim for excessive force, which are dismissed.

**DONE AND ORDERED** at Fort Myers, Florida, this ___9th___ day of May, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record