UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRUNO RODI,

    Plaintiff,

v.                                    Case No: 2:13-cv-556-FtM-29CM

KEVIN J. RAMBOSK, Collier County Sheriff, in his individual and official capacity and KEVIN WARD, in his individual capacity as a Collier County Police Officer,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on the defendant Kevin Ward's Motion for Summary Judgment (Doc. #56) and defendant Kevin Rambosk's Motion for Summary Judgment (Doc. #37) filed on January 29, 2015. Plaintiff filed Responses in Opposition (Doc. #71; Doc. #72) on February 17, 2015.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us,

Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**II.**

On March 8, 2012, plaintiff Bruno Rodi, a sixty year old male, was driving his motor vehicle on Industrial Boulevard in Naples, Florida. (Doc. #56-1, pp. 37-38.) After passing another vehicle, Rodi drove through a four way stop without stopping. (Id.) Michele Shattuck, a deputy with the Collier County Sheriff's Office, witnessed the event and initiated a traffic stop. (Id. at 38.)

Deputy Shattuck approached plaintiff's vehicle and obtained Rodi's license and registration. Deputy Shattuck requested that plaintiff remain in his vehicle while she verified his information. (Doc. #1, ¶ 16.) Deputy Shattuck subsequently ran a check on the vehicle's license plate and learned that the car was registered to a thirty year old male with a suspended license. (Doc. #72-7, p. 7.) Deputy Shattuck then returned to the vehicle and ordered plaintiff to step out of the vehicle for questioning. (Id. at 8, 15.) Plaintiff responded to Deputy Shattuck's order by asking why he had to step out of the vehicle. (Doc. #56-1, p. 40.) He also inquired as to why he could not be issued a ticket and go on his way. (Id.) Deputy Shattuck once again ordered plaintiff out of the vehicle and plaintiff again asked why she would not give him a ticket and permit him to leave. (Id. at 41-42.) Plaintiff then informed Deputy Shattuck that he was reluctant to get out of the car because he was still recovering from a broken foot.

3

Due to plaintiff's non-compliance, Deputy Shattuck drew her taser and informed plaintiff that she would tase him if he did not get out of the car. (Doc. #56-1, p. 45; Doc. #72-7, p. 8.) Deputy Shattuck also radioed for backup. Plaintiff finally complied with Deputy Shattuck's order and exited his vehicle. (Doc. #56-1, p. 45.) Once plaintiff was out of the vehicle, Deputy Shattuck holstered her taser, drew out her handcuffs, and ordered plaintiff to place his hands on the top of the vehicle. Plaintiff complied with the order and was placed in handcuffs. (Doc. #56-1, p. 45.)

At that time, Kevin Ward, also a deputy with the Collier County Sheriff's Office, arrived on the scene with his service weapon in hand. (Doc. #56-1, p. 49.) Deputy Shattuck then directed Deputy Ward to place plaintiff in the back of her police cruiser. (Doc. #56-2, p. 11.) Before placing plaintiff in the vehicle, Deputy Ward conducted a search plaintiff's person for any weapons or contraband. (Id. at 12, 15.) During the search, Deputy Ward asked plaintiff to spread his legs, and plaintiff then spread his legs to a normal width. (Doc. #56-1, p. 52.) At this point, the parties' accounts of the arrest begin to diverge.

Plaintiff testified that Deputy Ward, in an effort to further spread plaintiff's legs, delivered more than three hard kicks to plaintiff's legs. (Id. at 53.) As a result of Deputy Ward's conduct, plaintiff testified that he suffered a fracture through the distal fibular of his left leg which exacerbated the already

4

existing pain and injury in plaintiff's broken foot.  (Doc. #56-1, pp. 53-54; Doc. #72-4.)  Deputy Ward, on the other hand, does not remember the events that transpired during the stop, but stated that he would have spread plaintiff's legs with a "leg sweep." (Doc. #56-2, p. 14.)  A leg sweep is performed by placing the outside of the officer's foot on the inside of the detainee's foot and gently pushing outward until the detainee's legs are spread. (Id.)

After the search, plaintiff was placed into the back of Deputy Shattuck's police cruiser and transported to the Collier County Jail.  When plaintiff arrived at the jail, his leg "was swollen like a loaf of bread."  (Doc. #71-2, p. 2.)  Plaintiff told the jail officials about his injury and was eventually sent to see the nurse.  Plaintiff was initially given a wheelchair to sit in, but it was taken away from his as soon as he was returned to his cell. Plaintiff was discharged from the jail at midnight and immediately went to the hospital for treatment.  (Id.)

Plaintiff was formally charged with resisting arrest without violence pursuant to Fla. Stat. § 843.02 by the State Attorney's Office for the Twentieth Judicial Circuit in Collier County.  The charges, however, were ultimately dismissed at the request of the State Attorney's Office, as was the ticket for failure to stop at the stop sign.  (Doc. #1, ¶ 46.)

On July 29, 2013, plaintiff filed a five-count complaint asserting claims against Deputy Shattuck, Deputy Ward, and Collier County Sheriff Kevin Rambosk. In Counts I and II of the Complaint, plaintiff asserts that Deputy Ward and Deputy Shattuck, respectively, deprived him of his rights to be free from excessive force and seizure without probable cause as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983. In Count III, plaintiff sets forth supplemental state tort claims against Sheriff Rambosk, in his official capacity as Sheriff of Collier County. Count IV, also an official capacity claim against Sheriff Rambosk, seeks a judgment declaring that plaintiff has suffered excessive force, wrongful seizure, and cruel and unusual punishment in violation 42 U.S.C. § 1983. Finally, in Count V plaintiff asserts a claim against all official capacity defendants for violations of his constitutional rights under 42 U.S.C. § 1983.

On February 20, 2014, Deputy Shattuck filed a motion for judgment on the pleadings, arguing that plaintiff failed to state a claim for false arrest and excessive force because plaintiff's arrest was supported by probable cause and the use of force was minimal. (Doc. #27.) The Court agreed and entered an Opinion and Order granting Deputy Shattuck's motion on May 9, 2014. (Doc. #33.) Judgment was entered in favor of Deputy Shattuck on July 1, 2014. (Doc. #40.)

**III.**

Deputy Ward contends that summary judgment is warranted as to plaintiff's excessive force claim because the force used was de minimis. Plaintiff disagrees, asserting that a jury issue exists.

**A.**

"Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities." Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir. 2003). It offers complete protection so long as the government actor's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "balances two important interest- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The Eleventh Circuit has often said that qualified immunity protects "all but the plainly incompetent or one who is knowingly violating federal law." Brown v. City of Huntsville, 608 F.3d 724, 733 (11th Cir. 2010) (citing Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

In order to receive the protection of qualified immunity, the government actor must first demonstrate that he was performing a

7

discretionary function. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007). The burden then shifts to the plaintiff to prove that qualified immunity does not insulate the official from liability. Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).

In determining whether an officer is entitled to qualified immunity, the Court employs a two-part inquiry, asking: (1) whether the facts, taken in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated the plaintiff's constitutional rights; and (2) whether the right violated was clearly established. Pearson, 555 U.S. at 232. A court may exercise its discretion in deciding the order in which the two prongs should be addressed. Id. at 236.

**B.**

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). It has long been recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). "Because a police officer is entitled to use some force to arrest a suspect, 'the application of de minimis force, without more, will not support a claim for excessive force in

violation of the Fourth Amendment.'" Myers v. Bowman, 713 F.3d 1319, 1327 (11th Cir. 2013) (quoting Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000)).  In determining if the use of force was reasonable, a court must examine (1) the need for the application of force, (2) the relationship between the need and amount of force use, and (3) the extent of the injury inflicted. Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000)).  The nature and degree of force needed is measured by such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 196.  The "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." Brown, 608 F.3d at 738.  A court's task is only to determine whether an officer's conduct falls within the outside boarders of what is reasonable in the constitutional sense. Buckley v. Haddock, 292 F. App'x 791, 794 (11th Cir. 2008).

Accepting plaintiff's version of the facts as true, the Court finds that a reasonable jury could find that Deputy Ward's actions constituted unlawful excessive force.  Plaintiff was not suspected of having committed a serious crime, did not pose an immediate threat to anyone, did not actively resist arrest, and was secured in handcuffs.  Despite this, Deputy Ward kicked plaintiff multiple

9

times and with enough force to fracture the distal fibular in plaintiff's left leg, an injury that cannot be said to be *de minimis*.[1] Assuming these facts are true, a reasonable officer should have known that using such force to effectuate a misdemeanor arrest in this situation would be impermissible. See Hadley, 526 F.3d at 1330 (holding that a police officer who struck a handcuffed, non-resisting suspect in the stomach violated the Fourth Amendment and was not entitled to qualified immunity); Lee, 284 F.3d at 1198 (allowing an excessive force claim to proceed when an officer slammed into the hood of a car an arrestee who was handcuffed, not posing a threat to the officer, and not posing a flight risk). See also Sanchez v. Hialeah Police Dep't, 357 F. App'x 229, 232 (11th Cir. 2009) (the Eleventh Circuit consistently allows excessive force claims to go forward where an arrestee was handcuffed, posed no risk of danger to the officer, and was not

---

[1] Deputy Ward argues that his conduct was not excessive because the kicks aggravated a preexisting condition. See Rodriquez v. Farrell, 280 F.3d 1341, 1353 (11th Cir. 2002) ("What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time."). Plaintiff, however, has presented evidence indicating that the fracture to his distal fibular was distinct and unrelated to his preexisting condition. (See Doc. #72-4.) This is sufficient to create a genuine dispute of material fact.

10

resisting arrest).[2]  Accordingly, Deputy Ward's motion for summary judgment is denied.

**IV.**

In Counts IV and V of the Complaint, plaintiff asserts § 1983 claims against Sheriff Rambosk, alleging that the application of excessive force and failure to render medical care was caused by the policies, procedures, rules, and directions set forth by Sheriff Rambosk.  Sheriff Rambosk argues that summary judgment should be granted because there is no evidence that plaintiff's constitutional rights were violated as a direct result of the policies in place on March 8, 2012.

To succeed on his § 1983 claim against Sherriff Rambosk, plaintiff must establish that (1) he has been deprived of a right, privilege, or immunity secured by the Constitution, and (2) he was so deprived under the auspices of governmental authority.  Mingo v. City of Mobile, Ala., 592 F. App'x 793, 799 (11th Cir. 2014). The Supreme Court has held that municipalities may be liable for violations of § 1983, but this liability is limited.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978).  Municipalities and local government entities may be sued for only their own

---

[2] "[A] handcuffed, non-resisting [suspect's] right to be free from excessive force was clearly established [by] February 2002." Saunders v. Duke, 766 F.3d 1262, 1268 (11th Cir. 2014) (quoting Hadley, 526 F.3d at 1333).

11

unconstitutional or illegal policies; they may not be sued for the acts of their employees. Id. at 691. As a result, a claim against a city under 42 U.S.C. § 1983 must be predicated upon an injury inflicted by a municipal policy or custom. City of Canton v. Harris, 489 U.S. 378, 385 (1989). Thus, a plaintiff seeking to impose § 1983 liability on a municipal government must prove that "action pursuant to official municipal policy" caused their injury. Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 691). This official policy can include the actual policy, the acts of the policymaking officials, and "practices so persistent and widespread as to practically have the force of law." Id.

**A.**

Plaintiff asserts that Sheriff Rambosk's failure to properly and adequately train his employees on how to treat the elderly and the infirmed was the moving force behind his injury.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 131 S. Ct. at 1359. However, a local authority's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. To satisfy § 1983, in a failure to train context, this failure "must amount to deliberate indifference to the rights

12

of persons with whom the [untrained employees] come into contact. Only then can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. (internal citations and quotations omitted).

The "stringent standard" of deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." Id. When policymakers have "actual or constructive notice" that an omission in a training program causes employees to violate citizens' constitutional rights, "the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. A "policy of inaction" can be the "functional equivalent of a decision by the city itself to violate the Constitution." Id.

Generally, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality. Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985); see also Craig v. Floyd Cnty., 643 F.3d 1306, 1310-11 (11th Cir. 2011). "A pattern of similar constitutional violations is ordinarily necessary. A single incident would not be so pervasive as to be a custom because a custom must be such a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Craig, 643 F.3d at 1311 (internal citations and marks omitted).

13

Plaintiff asserts that Deputy Ward's conduct evidences Sheriff Rambosk's failure to properly and adequately train his employees on how to treat the elderly and the infirmed. Plaintiff, however, has pointed to no another occasion when an excessive amount of force was used on an elderly or infirmed individual, and there is no evidence indicating that Sheriff Rambosk was on notice of the need to train his deputies in this area. The absence of such evidence is fatal to plaintiff's argument. Before municipal liability can arise based on the failure to establish a training policy or procedure, "the need for such training must be plainly obvious to Department decision makers." Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990). The need for training is not plainly obvious unless there is "evidence of a history or widespread abuse." Id. See also Rocker v. City of Ocala, Fla., 355 F. App'x 312, 314 (11th Cir. 2009). As such, the Court finds that Sheriff Rambosk is entitled to summary judgment on plaintiff's failure to train claim.

**B.**

Plaintiff next argues that Sheriff Rambosk should be held liable under a ratification theory. Specifically, he contends that Sheriff Rambosk implicitly ratified the use of a "leg sweep" and the kicking of a detained individual. In support, plaintiff references the fact that Deputy Ward was not disciplined for his use of force.

14

In order to establish liability under § 1983 under a ratification theory, plaintiff must show a "persistent failure to take disciplinary action against officers" who use excessive force, which "can give rise to the inference that a municipality has ratified conduct, thereby establishing a 'custom' within the meaning of Monell." Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985). See also Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) ("A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference toward the police misconduct.").

The problem with plaintiff's argument, as noted above, is that he cannot point to a widespread practice of such excessive force. Without such evidence, plaintiff's contention that Sheriff Rambosk deliberately ignored an unconstitutional custom or policy is without merit. Moreover, "[a]n inadequate investigation following the subject incident will not sustain a claim of municipal liability, because after-the-fact inadequate investigation could not have been the legal cause" of plaintiff's injuries. Feliciano v. City of Miami Beach, 847 F. Supp. 2d 1359, 1367 (S.D. Fla. 2012). Accordingly, Sheriff Rambosk's motion for summary judgment is granted as to this issue.

### C.

Plaintiff's final argument is that Sheriff Rambosk is liable under § 1983 because unknown employees at the Collier County Jail acted with deliberate indifference to his serious medical need. Plaintiff, however, does not argue that Sheriff Rambosk had a custom or policy of being deliberately indifferent to inmates' medical needs. Instead, plaintiff focuses on the treatment he received while imprisoned at the Collier County Jail. As previously stated, a municipality may only be liable under § 1983 when the execution of the government's policy or custom inflicts the injury. See McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). Because plaintiff has failed to identify a custom or policy of deliberate indifference to serious medical needs, Sheriff Rambosk's motion for summary judgment is due to be granted.

In conclusion, summary judgment will be granted in favor of Sheriff Rambosk as to all of plaintiff's § 1983 municipal liability claims set forth in Counts IV and V of the Complaint.

### V.

In Count III of the Complaint, plaintiff asserts state law claims for battery and false arrest against Sheriff Rambosk for the alleged acts of Deputies Shattuck and Ward. As a preliminary matter, the Court finds that Sheriff Rambosk is entitled to summary judgment on the claim for false arrest because plaintiff's arrest was supported by probable cause. (See Doc. #33.) As to the claim

16

for battery, the Court finds that a genuine dispute of material fact remains.

Sheriff Rambosk argues that he is entitled to immunity under Fla. Stat. § 768.28(9) because plaintiff alleges that Deputy Ward acted willfully, wantonly, and recklessly. Under Florida law, a municipality "shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). In McGee v. Volusia County, the Florida Supreme Court held that "[i]n any given situation either the [police] agency can be held liable under Florida law, or the employee, but not both." 679 So. 2d 729, 733 (Fla. 1996). Acts "that can be described as abuses of lawful power" are within the scope of an officer's employment unless they "are so extreme as to constitute a clearly unlawful usurpation of authority the [officer] does not rightfully possess . . . or if there is not even a pretense of lawful right in the performance of the acts." Id. The question as to whether the officer acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights, safety, or property is one for the finder of fact. Id.

17

As previously discussed, there is a genuine dispute as to the amount of force used by Deputy Ward. As a result, there is also a factual dispute as to whether Deputy Ward acted willfully, wantonly, and recklessly. Until this factual issue is resolved, the Court is unable to conclude that Sheriff Rambosk is entitled to immunity under Fla. Stat. § 768.28(9). Sheriff Rambosk's motion for summary judgment is therefore denied as to this issue.

Accordingly, it is now

**ORDERED:**

1. Defendant Kevin Ward's Motion for Summary Judgment (Doc. #56) is **DENIED**.

2. Defendant Kevin Rambosk's Motion for Summary Judgment (Doc. #37) is **GRANTED in part and DENIED in part.** Count III is dismissed as to the claim for false arrest, and Counts IV and V are dismissed in their entirety. Dismissal is with prejudice. The motion is otherwise denied.

**DONE AND ORDERED** at Fort Myers, Florida, this ___24th___ day of April, 2015.

*John E. Steele*
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record